1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIJAH GILMORE, | Case No. 1:11-cv-00280-LJO-DLB PC |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED** |
| v. | |
| BENNETT, et al., | ECF No. 38 |
| Defendants. | OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS |

## I.      Background

Plaintiff Elijah Gilmore ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR").  Plaintiff is proceeding pro se and in forma pauperis in this civil action pursuant to 42 U.S.C. § 1983.  This action is proceeding on Plaintiff's Complaint, filed February 17, 2011, against Defendants Bennett and Renninger for deliberate indifference to a serious medical need in violation of the Eighth Amendment.  On September 18, 2012, Defendants filed a Motion for Summary Judgment.  ECF No. 38.  Plaintiff did not file an opposition.[1]  The matter is submitted pursuant to Local Rule 230(l).

_____

[1] Plaintiff was properly notified by Defendants of the requirements for opposing Defendants' motion for summary judgment in compliance with *Woods v. Carey*, 684 F.3d 934, 936 (9th Cir. 2012), and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc).

## II.    **Summary Judgment Standard**

Summary judgment is appropriate when it is demonstrated that there exists no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* at 324. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2002); *T.W. Elec. Serv., Inc.*

1  *v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

2  genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

3  party, *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Wool v. Tandem*

4  *Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

5          In the endeavor to establish the existence of a factual dispute, the opposing party need not

6  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

7  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

8  trial."  *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the

9  pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

10  *Matsushita*, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963

11  amendments).

12          In resolving a motion for summary judgment, the court examines the pleadings, depositions,

13  answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ.

14  P. 56(c).  The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all

15  reasonable inferences that may be drawn from the facts placed before the court must be drawn in

16  favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United States v. Diebold, Inc.*, 369

17  U.S. 654, 655 (1962) (per curiam)).

18          Finally, to demonstrate a genuine dispute, the opposing party "must do more than simply

19  show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a

20  whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

21  issue for trial.'"  *Matsushita*, 475 U.S. at 586-87 (citations omitted).

22  **III.    Statement of Facts[2]**

23          On February 2, 2007, Plaintiff was an inmate at the California Correctional Institution

24  ("CCI") in Tehachapi, California.  Pl.'s Compl. ¶ 7; Ex. B, Pl.'s Dep. 22:12-23, June 22, 2012.  He

25  was housed in Facility A Yard.  Pl.'s Compl. ¶ 7.  On February 2, 2007, in the early afternoon,

26

27          [2]  **Error! Main Document Only.**All facts are considered undisputed, unless otherwise noted.  Pursuant to
Local Rule 260(a), "[e]ach motion for summary judgment or summary adjudication shall be accompanied by a
'Statement of Undisputed Facts' that shall enumerate discretely each of the specific material facts relied upon in support
28  of the motion and cite the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or
other document relied upon to establish that fact."  The Court will consider only those facts and evidence that are
relevant to resolving the motion for summary judgment.

1   Plaintiff complained of headache symptoms and was sent to the hospital clinic.  Pl.'s Compl. ¶ 7.

2   Earlier that morning, Plaintiff took blood pressure medication (Atendol) prescribed for his cellmate.

3   Pl.'s Dep. 32:5-25; 84:8-25.  Plaintiff had previously been prescribed blood pressure medication but

4   ran out of his prescription several days before.

5       Plaintiff was taken into a clinic examination room at approximately 1310 hours on February

6   7, 2007 and was examined by Defendant RN Bennett.  Bennett Decl. ¶¶ 1-3.  Defendant Bennett is a

7   Registered Nurse, licensed in 1981, and has extensive nursing experience and training. Bennett Decl.

8   ¶¶ 1-2.  Defendant Bennett was the nurse on yard A on February 2, 2007.  Bennett Decl. ¶¶ 1-2.

9       Plaintiff spoke with Defendant Bennett who examined him.  Bennett Decl. ¶¶ 4-6.  He

10  complained of nausea and headache.  Compl. ¶¶ 8-9.  Plaintiff's blood pressure was tested and he

11  was given a "head to toe" examination by Defendant Bennett.  Plaintiff had taken his cellmate's

12  blood pressure medication.  Pl. Dep. 84:8-25.  Plaintiff was instructed to not take medications

13  prescribed for other inmates. Bennett Decl. ¶ 5.  The head to toe examination consisted of checking

14  his vital signs, blood pressure, respiration, pulse rate, oxygen level, capillary refill among other

15  observations. Bennett Decl. ¶ 4.  Plaintiff was alert to person, place, time and purpose.  Bennett

16  Decl. ¶ 4.  Plaintiff was not bleeding and did not appear to be in acute distress.  Pl. Dep. 77:12-21;

17  Bennett Decl. ¶ 6.  Both eyes were checked for pupil reaction, and he appeared to be neurologically

18  intact. Bennett Decl. ¶ 4. Plaintiff had never had headache symptoms like this before.  Pl. Dep.

19  97:13-98:1.

20      Plaintiff's speech was clear and not slurred. Bennett Decl. ¶ 6.  He complained of headache

21  pain. Bennett Decl. ¶ 6.  Defendant Bennett attributed Plaintiff's headache pain in part, to taking his

22  cell mate's blood pressure medication.  Bennett Decl. ¶ 5.  After the initial exam, Plaintiff stayed in

23  the exam room for approximately 25 minutes, resting while Defendant Bennett consulted with Dr.

24  Hirsch, the on-call doctor.  Bennett Decl. ¶ 6.  At approximately 1:35 p.m., Defendant Bennett

25  retested Plaintiff's blood pressure, pulse, and respiration.  Bennett Decl. ¶ 6.  They were within

26  normal limits although his blood pressure was slightly higher.  Bennett Decl. ¶ 6.  After consulting

27  with Dr. Hirsch, it was determined that Plaintiff would be released and sent back to his housing unit.

28  Bennett Decl. ¶¶ 7-8.

4

1      At approximately 1351 hours (more or less 10 minutes before 2:00 p.m.) Plaintiff was to be

2  removed from the clinic. Bennett Decl. ¶ 8.  Plaintiff was stable enough to be returned to his housing

3  unit.  Bennett Decl. ¶ 8.  Defendant medical technical assistant ("MTA") Renninger was called to

4  assist in moving Plaintiff, lifting him from the exam table to a sitting position and preparing Plaintiff

5  for transport to his housing unit.  Bennett Decl. ¶ 8.  Defendant Renninger was not present in the

6  exam room at the time Defendant Bennett performed the examination of Plaintiff. Renninger Decl. ¶

7  6.  The lifting of Plaintiff was done in the presence of Defendant Bennett. Bennett Decl. ¶ 8. At no

8  time did Defendant Bennett see Defendant Renninger roughly handle Plaintiff.  Bennett Decl. ¶ 8.

9  Defendant Renninger did not participate in the examination or treatment of Plaintiff. Bennett Decl. ¶

10  8; Renninger Decl. ¶ 6.  Plaintiff was sent back to his housing unit.  Bennett Decl. ¶ 8.

11      Later that day, Defendant Bennett made arrangements to have Plaintiff's pressure

12  prescription refilled, and to have pain medication (Tylenol) also given.  Bennett Decl. ¶ 9; Ex. B,

13  Physician's Order Form, dated 2/2/07.  These medications were provided to Plaintiff later the same

14  day.  Bennett Decl. ¶ 9. If Defendant Bennett though Plaintiff was faking his symptoms, she would

15  not have arranged for him to obtain his medications.  Bennett Decl. ¶ 9.

16      A couple days later, Defendant Bennett learned that Plaintiff had additional symptoms on

17  February 3, 2007, including bleeding from his nose.  Bennett Decl. ¶ 10.  Plaintiff was later

18  diagnosed with a benign tumor by MRI at a local hospital. Pl. Dep. 97:1-12.  A brain tumor is not

19  something that can be diagnosed by the type of examination Defendant Bennett conducted.  Bennett

20  Decl. ¶ 10.  Plaintiff had not been evaluated or diagnosed with any symptoms of a brain tumor.

21  Bennett Decl. ¶ 10.  There was no reason for Defendant Bennett on February 2, 2007 to suspect this

22  condition.  Bennett Decl. ¶ 10.

23      During the examination by Defendant Bennett on February 2, 2007, she did her best to

24  evaluate Plaintiff's condition and objective symptoms and subjective complaints and provided

25  treatment within the scope of her license. Bennett Decl. ¶ 11.  At no time on February 2, 2007, did

26  Defendant Bennett refuse to examine or treat Plaintiff.  Bennett Decl. ¶ 11.  At no time did

27  Defendant Bennett ever knowingly or intentionally cause Plaintiff to experience any pain, suffering,

28  injury or illness. Bennett Decl. ¶ 11.  Defendant Bennett provided an examination and treatment

5

based on Plaintiff's subjective complaint, objective and observable symptoms and after consultation with Dr. Hirsch. Bennett Decl. ¶ 11.  The care and treatment by Defendant Bennett was consistent with Plaintiff's symptoms at the time. Bennett Decl. ¶ 11.  If Defendant Bennett had thought Plaintiff was suffering from anything of a more serious medical nature, she would have called the doctor and requested that the doctor examine Plaintiff.  Bennett Decl. ¶ 11.

Plaintiff attended high school, but has no medical training whatsoever, and he is not a doctor or registered nurse, and therefore cannot self-diagnose his medical condition. Pl. Dep. 42:1-15; 12:19-13:25; 31:5-12, 33:23-34:7.

**III.    Analysis**

Defendants contend that neither Defendant acted with deliberate indifference to a serious medical need.  Defs. Mem. P. & A. 10:19-13:3.

The Eighth Amendment prohibits cruel and unusual punishment.  "The Constitution does not mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation and citation omitted).   A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).  The deliberate indifference standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." *Id.* at 837.

"Deliberate indifference is a high legal standard." *Toguchi*, 391 F.3d at 1060.  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Based on the undisputed facts, and construed in the light most favorable to Plaintiff as the non-moving party, there is no genuine dispute of material fact as to Plaintiff's claims against either Defendant Bennett or Renninger.  Defendant Bennett provided an extensive examination of Plaintiff on February 2, 2007, consulted with the on-call doctor, and arranged for Plaintiff to receive his medication.  There are no facts which suggest that Defendant Bennett was even aware that Plaintiff had a benign tumor.  There are no material facts in dispute which would indicate that Defendant Bennett acted with deliberate indifference to Plaintiff's serious medical need.

Defendant Renninger was under no affirmative obligation to provide further examination for Plaintiff, after Defendant Bennett had already examined Plaintiff.  *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (when making causation determination for § 1983 claims, courts "must take a very individualized approach which accounts for the duties, discretion, and means of each defendant").  Defendant Renninger merely assisted in having Plaintiff moved from the examination table so that he could be returned to his cell.  Defendant Bennett did not see any handling of Plaintiff by Defendant Renninger that was inappropriate.  There are no material facts in dispute which would indicate that Defendant Renninger acted with deliberate indifference to Plaintiff's serious medical need.

Accordingly, Defendants are entitled to judgment as a matter of law.  Summary judgment should be granted in favor of Defendants and against Plaintiff as to the sole Eighth Amendment claim.

## IV.   **Conclusion and Recommendation**

Based on the foregoing, it is HEREBY RECOMMENDED that

1.   Defendants' Motion for Summary Judgment, filed September 18, 2012, be granted in full; and

2.   The Clerk of the Court be directed to enter judgment accordingly and close this action.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and

Recommendations."  A party may respond to another party's objections by filing a response within **fourteen (14) days** after being served with a copy of that party's objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).


IT IS SO ORDERED.

    Dated:   __**April 24, 2013**__                    _____ /s/ *Dennis L. Beck*
                                                 UNITED STATES MAGISTRATE JUDGE